**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| CHRISTOPHER REEVES, | ) | **COMPLAINT** |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | Case No: 1:25-cv-262 |
| COLUMBIA DEBT RECOVERY, | ) | |
| LLC D/B/A GENESIS CREDIT | ) | |
| MANAGEMENT | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| & | ) | |
| | ) | |
| LEAFY FINANCIAL, LLC | ) | |
| | ) | |
| & | ) | |
| | ) | |
| MIDLAND CREDIT | ) | |
| MANAGEMENT, INC. | ) | |
| | ) | |
| & | ) | |
| | ) | |
| SPRING OAKS CAPITAL, LLC | ) | |
| | ) | |
| & | ) | |
| | ) | |
| EQUIFAX INFORMATION | ) | |
| SERVICES, LLC | ) | |
| | ) | |
| & | ) | |
| | ) | |
| EXPERIAN INFORMATION | ) | |
| SOLUTIONS, INC. | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT AND JURY DEMAND

COMES NOW, Plaintiff Christopher Reeves, by and through the undersigned counsel, and

for his Complaint against Defendants Columbia Debt Recovery, LLC d/b/a Genesis Credit

Management ("CDR"), Leafy Financial, LLC ("LF"), Midland Credit Management, Inc. ("MCM"),

Spring Oaks Capital, LLC ("SOC"), Equifax Information Services, LLC ("EQ"), and Experian Information Solutions, Inc. ("EXP")(and together collectively, "Defendants") for violations under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq. ("FDCPA") and for violations under the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. ("FCRA"), states as follows:

## JURISDICTION

1.      This court has jurisdiction of the federal claim under 15 U.S.C. § 1692k(d) and 1681(p).

2.      Venue is proper because Plaintiff resides here, the acts and transactions occurred here, and CDR, LF, MCM, SOC, EQ, and EXP transact business here.

3.      Under 28 U.S. Code § 1391(b)(2) a civil action may be brought in a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred.

4.      Under 28 U.S. Code § 1391(d) when a defendant that is a corporation is subject to personal jurisdiction at the time an action is commenced, such corporation shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate state.

5.      Plaintiff resides in the city of Georgetown, a part of Williamson County, Texas 78626.

6.      The acts that occurred giving rise to this complaint occurred while Plaintiff was in the city of Georgetown, a part of Williamson County, Texas 78626, making this Division a proper venue under 28 U.S. Code § 1391(b)(2).

7.      Defendant CDR, a corporation headquartered in Everett, WA, practices as a debt collector throughout the country, including Texas.

8.      Defendant LF, a corporation headquartered in Bedford, TX, practices as a debt collector throughout the country, including Texas.

9.      Defendant MCM, a corporation headquartered in San Diego, CA, practices as a debt collector throughout the country, including Texas.

10.     Defendant SOC, a corporation headquartered in Chesapeake, VA, practices as a debt collector throughout the country, including Texas.

11.     Defendants CDR, LF, MCM, and SOC attempt to collect alleged debts throughout the state of Texas, including in Georgetown city and Williamson County.

12.     Defendants CDR, LF, MCM, and SOC have actual knowledge of where Plaintiff resided, and by attempting to collect from Plaintiff, purposefully availed themselves to the jurisdiction in which Plaintiff resided.

13.     Defendants CDR, LF, MCM, and SOC have sufficient minimum contacts with this venue as the alleged injuries caused to Plaintiff were caused while Plaintiff was in Georgetown city and Williamson County and Defendants attempt to collect alleged debts throughout the state of Texas.

14.      Defendants CDR, LF, MCM, and SOC knowingly attempted to collect on debts allegedly incurred in Georgetown, Texas and thus have sufficient minimum contacts with this venue is additionally proper under 28 U.S. Code § 1391(b)(1).

15.     Defendant EQ, a corporation headquartered in Atlanta, GA, practices as a debt collector throughout the country, including Texas.

16.     Defendant EQ serves as a credit reporting agency of consumer credit throughout the state of Texas, including in Georgetown city and Williamson County.

17.     Defendant EQ has actual knowledge of where Plaintiff resided, and by improperly reporting to Plaintiff's credit and providing Plaintiff with such an update, Defendant EQ purposefully availed itself to the jurisdiction in which Plaintiff resided.

18.     Defendant EQ has sufficient minimum contacts with this venue as the alleged injuries caused to Plaintiff were caused while Plaintiff was in Georgetown city and Williamson County and Defendant attempts to collect alleged debts throughout the state of Texas.

19.      Defendant EQ knowingly reported information regarding a Plaintiff domiciled in Georgetown, Texas and thus has sufficient minimum contacts with this venue, making venue additionally proper under 28 U.S. Code § 1391(b)(1).

20.      Defendant EXP, an Ohio corporation headquartered in Costa Mesa, CA, practices as a debt collector throughout the country, including Texas.

21.      Defendant EXP serves as a credit reporting agency of consumer credit throughout the state of Texas, including in Georgetown city and Williamson County.

22.      Defendant EXP has actual knowledge of where Plaintiff resided, and by improperly reporting to Plaintiff's credit and providing Plaintiff with such an update, Defendant EXP purposefully availed itself to the jurisdiction in which Plaintiff resided.

23.      Defendant EXP has sufficient minimum contacts with this venue as the alleged injuries caused to Plaintiff were caused while Plaintiff was in Georgetown city and Williamson County and Defendant attempts to collect alleged debts throughout the state of Texas.

24.      Defendant EXP knowingly reported information regarding a Plaintiff domiciled in Georgetown, Texas and thus has sufficient minimum contacts with this venue, making venue additionally proper under 28 U.S. Code § 1391(b)(1).

## STANDING

25.      Plaintiff has a congressionally defined right to receive all communications from a debt collector free from any misrepresentations and false threats.

26.      CDR, LF, MCM, and SOC's collection activities violated the FDCPA.

27.      Defendants' credit reporting and/or failure to properly dispute information violated the FCRA.

28.      Plaintiff has thus suffered an injury as a result of Defendants' conduct, giving rise to standing before this Court. Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1544 (2016), quoting Lujan v.

<u>Defenders of Wildlife</u>, 504 U.S. 555, 580 (1992) (Congress has the power to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before.); <u>Bellwood v. Dwivedi</u>, 895 F. 2d 1521, 1526-27 (7th Cir. 1990) ("Congress can create new substantive rights, such as a right to be free from misrepresentations, and if that right is invaded the holder of the right can sue without running afoul of Article III, even if he incurs no other injury[.]").

29.     "Without the protections of the FDCPA, Congress determined, the '[e]xisting laws and procedures for redressing these injuries are inadequate to protect consumers.'" <u>Lane v. Bayview Loan Servicing, LLC</u>, No. 15 C 10446, 2016 WL 3671467, at *3 (N.D. Ill. July 11, 2016)(quoting 15 U.S.C. § 1692(b)). Thus, a failure to honor a consumer's right under the FDCPA constitutes an injury in fact for Article III standing. See id. at *3 (holding that a consumer "has alleged a sufficiently concrete injury because he alleges that [Defendant] denied her the right to information due to her under the FDCPA."); see also <u>Church v. Accretive Health, Inc.</u>, No. 15-15708, 2016 WL 3611543, at *3 (11th Cir. July 6, 2016) (holding that consumer's § 1692g claim was sufficiently concrete to satisfy injury-in-fact requirement).

30.     "[E]ven though actual monetary harm is a sufficient condition to show concrete harm, it is not a necessary condition." <u>Lane</u>, 2016 WL 3671467 at *4.

## PARTIES

31.     Plaintiff, Christopher Reeves (hereafter "Plaintiff"), is a natural person currently residing in Williamson County, in the state of Texas.

32.     Plaintiff is a "consumer" within the meaning of the FDCPA, 15 U.S.C. § 1692a(3).

33.     Plaintiff is a "consumer" as that term is defined by the FCRA, 15 U.S.C. §1681a(c).

34.     Defendant CDR is a corporation engaged in the business of collecting debts, using mails and telephone, in this state with its principal address at 906 SE Everett Mall Way, Ste 301, Everett, WA 98208.

35.    Defendant LF is a corporation engaged in the business of collecting debts, using mails and telephone, in this state with its principal address at 2921 Brown Trail Suite 250, Bedford, TX 76021.

36.    Defendant MCM is a corporation engaged in the business of collecting debts, using mails and telephone, in this state with its principal address at 350 Camino De La Reina, Suite 100, San Diego, CA 92108.

37.    Defendant SOC is a corporation engaged in the business of collecting debts, using mails and telephone, in this state with its principal address at 1400 Crossways Blvd, Ste. 100B, Chesapeake, VA 23320.

38.    CDR, LF, MCM, and SOC are each engaged in the business of a collection agency, using the mails, telephone, and consumer collection agencies to collect consumer debts originally owed to others.

39.    CDR, LF, MCM, and SOC regularly collect or attempt to collect defaulted consumer debts due or asserted to be due another, and are each a "debt collector" as defined in 15 U.S.C. § 1692a(6) of the FDCPA.

40.    Defendant EQ is a corporation with its principal place of business located at 1550 Peachtree St. NE #H-46, Atlanta, GA 30309.

41.    Defendant EXP is an Ohio corporation with its principal place of business located at 475 Anton Boulevard, Costa Mesa, CA 92626.

42.    Defendants CDR, LF, MCM, and SOC are each a "furnisher of information" as that term is defined by the FCRA, 15 U.S.C. §1681s-2(b).

43.    EQ, and EXP are each a "consumer reporting agency that compiles and maintains files on consumers on a nationwide basis" as defined by 15 U.S.C. § 1681a(p). EQ, and EXP regularly engage in the business of compiling and maintaining files on consumers on a nationwide basis for the

purpose of furnishing consumer reports to third parties bearing on a consumer's credit worthiness, credit standing, or credit capacity, each of the following regarding consumers residing nationwide:

      a. Public record information;

      b. Credit account information from persons who furnish that information regularly and in the ordinary course of business.

## FACTUAL ALLEGATIONS

44.    Plaintiff is a natural person allegedly obligated to pay a debt asserted to be owed to creditors other than CDR, LF, MCM, and SOC.

45.    On a date better known by CDR, CDR began to attempt to collect an alleged consumer debt from the Plaintiff.

46.    The alleged debt was said to be owed to Woodford on Mockingbird.

47.    That this alleged debt would only have been incurred for a personal line of credit and would have been only for personal or family purposes.

48.    That this alleged account would have only been used for personal, family, or household purposes and would thus be a consumer debt.

49.    The reporting of the alleged debt is inaccurate in that the Plaintiff does not owe this debt.

50.    The reporting of the alleged debt contains inaccurate dispute information.

51.    That CDR was reporting the collection account on Plaintiff's credit report with EQ.

52.    That CDR was voluntarily reporting the alleged collection account on Plaintiff's credit report with the credit reporting agencies.

53.    CDR's voluntary reporting to the credit reporting agencies is a "communication" under the FDCPA in connection with the collection of an alleged debt.

54.     On or about February 2, 2024, Plaintiff sent dispute letters via USPS mail to EQ notifying the account with CDR as disputed.

55.     These letters provided notice of the inaccurate reporting to EQ.

56.     Once EQ received notice of these letters, they were required to provide notice of such disputes and request for re-investigation to the furnisher, in this case CDR.

57.     EQ received the letters sent by Plaintiff.

58.     EQ transmitted notice of these disputes to CDR via an Automated Credit Dispute Verification form ("ACDV").

59.     CDR was required to investigate Plaintiff's dispute in full upon receipt of the ACDV, and by extension, notice of the inaccuracy.

60.     Alternatively, EQ negligently failed to send notice of the disputes to CDR after receiving notice of the disputes from Plaintiff.

61.     Alternatively, EQ willfully failed to send notice of the disputes to CDR after receiving notice of the disputes from Plaintiff.

62.     After receiving this notice, in any subsequent voluntary reporting, CDR must then include the dispute notation on said account.

63.     On or about April 21, 2024, Plaintiff received an updated credit file from EQ.

64.     That the credit report was updated on April 16, 2024 by CDR.

65.     That the updated April 21, 2024 credit report did not contain updated account information even after such dispute was sent by Plaintiff, received by EQ, and transmitted to CDR.

66.     Alternatively, that the updated April 21, 2024, credit report did not contain updated account information even after such dispute was sent by Plaintiff and received by EQ after EQ failed to notify CDR.

67.     EQ failed to properly reinvestigate Plaintiff's dispute.

68.     As a result of EQ's failure to reinvestigate, the updated April 21, 2024 credit report contained inaccurate information.

69.     EQ failed to follow reasonable procedures to ensure maximum accuracy by not sending Plaintiff's dispute to the furnisher after it received the dispute directly from Plaintiff.

70.     The inaccurate reporting caused Plaintiff to be subjected to higher interest rates on lines of credit.

71.     The inaccurate reporting caused Plaintiff to be subjected to a credit denial.

72.     The inaccurate reporting caused Plaintiff to be subjected to loss of credit opportunity.

73.     EQ failed to follow reasonable procedures to ensure maximum possible accuracy in the reporting of Plaintiff's credit.

74.     CDR must have voluntarily updated the Plaintiff's alleged account by communicating with EQ.

75.     That CDR furnished information to EQ, regarding Plaintiff's account without notifying them the account had been disputed by consumer, even after receiving notice by EQ of the disputes.

76.     That CDR failed to update the account information and mark the account as disputed on the updated April 21, 2024 credit report after Plaintiff disputed the account on February 2, 2024 and was given notice of such by EQ.

77.     In the alternative, if CDR properly updated the account information and marked the account as disputed with EQ after receiving notification of disputes from Plaintiff, then EQ, failed to update the account information and mark the account as disputed on the updated April 21, 2024 credit report.

78.     That CDR never properly updated the account information or marked the account as disputed even after receiving information of the disputes from EQ.

79.     Alternatively, EQ never updated the account information and marked the account as disputed even after receiving information of the dispute remark from CDR in its subsequent voluntary reporting or via a response to an Automated Credit Dispute Verification ("ACDV") request.

80.     On a date better known by LF, LF began to attempt to collect an alleged consumer debt from the Plaintiff.

81.     The alleged debt was said to be owed to U-Own Leasing.

82.     That this alleged debt would only have been incurred for a personal line of credit and would have been only for personal or family purposes.

83.     That this alleged account would have only been used for personal, family, or household purposes and would thus be a consumer debt.

84.     The reporting of the alleged debt is inaccurate in that it is not owed by the Plaintiff.

85.     The reporting of the alleged debt contains inaccurate dispute information.

86.     That LF was reporting the collection account on Plaintiff's credit report with EQ, and EXP.

87.     That LF was voluntarily reporting the alleged collection account on Plaintiff's credit report with the credit reporting agencies.

88.     LF's voluntary reporting to the credit reporting agencies is a "communication" under the FDCPA in connection with the collection of an alleged debt.

89.     On or about February 2, 2024, Plaintiff sent dispute letters via USPS mail to EQ, and EXP notifying the account with LF as disputed.

90.     These letters provided notice of the inaccurate reporting to EQ, and EXP.

91.     Once EQ, and EXP received notice of these letters, they were required to provide notice of such disputes and request for re-investigation to the furnisher, in this case LF.

92.     EQ, and EXP received the letters sent by Plaintiff.

93.     EQ, and EXP transmitted notice of these disputes to LF via an Automated Credit Dispute Verification form ("ACDV").

94.     LF was required to investigate Plaintiff's dispute in full upon receipt of the ACDV, and by extension, notice of the inaccuracy.

95.     Alternatively, EQ, and EXP negligently failed to send notice of the disputes to LF after receiving notice of the disputes from Plaintiff.

96.     Alternatively, EQ, and EXP willfully failed to send notice of the disputes to LF after receiving notice of the disputes from Plaintiff.

97.     After receiving this notice, in any subsequent voluntary reporting, LF must then include the dispute notation on said account.

98.     On or about April 21, 2024 , Plaintiff received an updated credit file from EQ.

99.     That the credit report was updated on April 6, 2024 by LF.

100.    That the updated April 21, 2024 credit report did not contain updated account information even after such dispute was sent by Plaintiff, received by EQ, and transmitted to LF.

101.    Alternatively, that the updated April 21, 2024 credit report did not contain updated account information even after such dispute was sent by Plaintiff and received by EQ after EQ failed to notify LF.

102.    EQ failed to properly reinvestigate Plaintiff's dispute.

103.    As a result of EQ's failure to reinvestigate, the updated April 21, 2024 credit report contained inaccurate information.

104.    EQ failed to follow reasonable procedures to ensure maximum accuracy by not sending Plaintiff's dispute to the furnisher after it received the dispute directly from Plaintiff.

105.    The inaccurate reporting caused Plaintiff to be subjected to higher interest rates on lines of credit.

106.   The inaccurate reporting caused Plaintiff to be subjected to a credit denial.

107.   The inaccurate reporting caused Plaintiff to be subjected to loss of credit opportunity.

108.   On or about, April 21, 2024, Plaintiff received an updated credit file from EXP.

109.   That the credit report was updated on April 6, 2024 by LF.

110.   That the updated April 21, 2024, credit report did not contain updated account information even after such dispute was sent by Plaintiff, received by and EXP transmitted to LF.

111.   Alternatively, that the updated April 21, 2024, credit report did not contain updated account information even after such dispute was sent by Plaintiff and received by EXP after EXP failed to notify LF.

112.   EXP failed to properly reinvestigate Plaintiff's dispute.

113.   As a result of EXP's failure to reinvestigate, the updated April 21, 2024, credit report contained inaccurate information.

114.   EXP failed to follow reasonable procedures to ensure maximum accuracy by not sending Plaintiff's dispute to the furnisher after it received the dispute directly from Plaintiff.

115.   The inaccurate reporting caused Plaintiff to be subjected to higher interest rates on lines of credit.

116.   The inaccurate reporting caused Plaintiff to be subjected to a credit denial.

117.   The inaccurate reporting caused Plaintiff to be subjected to loss of credit opportunity.

118.   LF failed to properly investigate or otherwise verify Plaintiff's dispute before voluntarily re-reporting the alleged debt.

119.   EQ and EXP  failed to follow reasonable procedures to ensure maximum possible accuracy in the reporting of Plaintiff's credit.

120.   LF must have voluntarily updated the Plaintiff's alleged account by communicating with EQ, and EXP .

121.    That LF furnished information to EQ, and EXP regarding Plaintiff's account without notifying them the account had been disputed by consumer, even after receiving notice by EQ, and EXP of the disputes.

122.    That LF failed to update the account information and mark the account as disputed on the updated April 21, 2024, credit report after Plaintiff disputed the account on February 2, 2024 and was given notice of such by EQ, and EXP.

123.    In the alternative, if LF properly updated the account information and marked the account as disputed with EQ, and EXP after receiving notification of disputes from Plaintiff, then EQ, and EXP failed to update the account information and mark the account as disputed on the updated April 21, 2024, credit report.

124.    That LF never properly updated the account information or marked the account as disputed even after receiving information of the disputes from EQ, and EXP.

125.    Alternatively, EQ, and EXP never updated the account information and marked the account as disputed even after receiving information of the dispute remark from LF in its subsequent voluntary reporting or via a response to an Automated Credit Dispute Verification ("ACDV") request.

126.    On a date better known by MCM, MCM began to attempt to collect an alleged consumer debt from the Plaintiff.

127.    The alleged debt was said to be owed to Comenity Capital Bank.

128.    That this alleged debt would only have been incurred for a personal line of credit and would have been only for personal or family purposes.

129.    That this alleged account would have only been used for personal, family, or household purposes and would thus be a consumer debt.

130.    The reporting of the alleged debt is inaccurate in that it is not owed by the Plaintiff.

131.    The reporting of the alleged debt contains inaccurate dispute information.

13

132.    That MCM was reporting the collection account on Plaintiff's credit report with EQ.

133.    That MCM was voluntarily reporting the alleged collection account on Plaintiff's credit report with the credit reporting agencies.

134.    MCM's voluntary reporting to the credit reporting agencies is a "communication" under the FDCPA in connection with the collection of an alleged debt.

135.    On or about February 2, 2024, Plaintiff sent dispute letters via USPS mail to EQ notifying the account with MCM as disputed.

136.    These letters provided notice of the inaccurate reporting to EQ.

137.    Once EQ received notice of these letters, they were required to provide notice of such disputes and request for re-investigation to the furnisher, in this case MCM.

138.    EQ received the letters sent by Plaintiff.

139.    EQ transmitted notice of these disputes to MCM via an Automated Credit Dispute Verification form ("ACDV").

140.    MCM was required to investigate Plaintiff's dispute in full upon receipt of the ACDV, and by extension, notice of the inaccuracy.

141.    Alternatively, EQ negligently failed to send notice of the disputes to MCM after receiving notice of the disputes from Plaintiff.

142.    Alternatively, EQ willfully failed to send notice of the disputes to MCM after receiving notice of the disputes from Plaintiff.

143.    After receiving this notice, in any subsequent voluntary reporting, MCM must then include the dispute notation on said account.

144.    On or about April 21, 2024, Plaintiff received an updated credit file from EQ.

145.    That the credit report was updated on April 6, 2024, by MCM.

146.    That the updated April 21, 2024, credit report did not contain updated account information even after such dispute was sent by Plaintiff, received by EQ, and transmitted to MCM.

147.    Alternatively, the updated April 21, 2024, credit report did not contain updated account information even after such dispute was sent by Plaintiff and received by EQ after EQ failed to notify MCM.

148.    EQ failed to properly reinvestigate Plaintiff's dispute.

149.    As a result of EQ's failure to reinvestigate, the updated April 21, 2024, credit report contained inaccurate information.

150.    EQ failed to follow reasonable procedures to ensure maximum accuracy by not sending Plaintiff's dispute to the furnisher after it received the dispute directly from Plaintiff.

151.    The inaccurate reporting caused Plaintiff to be subjected to higher interest rates on lines of credit.

152.    The inaccurate reporting caused Plaintiff to be subjected to a credit denial.

153.    The inaccurate reporting caused Plaintiff to be subjected to loss of credit opportunity.

154.    EQ failed to follow reasonable procedures to ensure maximum possible accuracy in the reporting of Plaintiff's credit.

155.    MCM must have voluntarily updated the Plaintiff's alleged account by communicating with EQ.

156.    That MCM furnished information to EQ regarding Plaintiff's account without notifying them the account had been disputed by consumer, even after receiving notice by EQ of the disputes.

157.    That MCM failed to update the account information and mark the account as disputed on the updated April 21, 2024, credit report after Plaintiff disputed the account on February 2, 2024, and was given notice of such by EQ.

158.    In the alternative, if MCM properly updated the account information and marked the account as disputed with EQ after receiving notification of disputes from Plaintiff, then EQ failed to update the account information and mark the account as disputed on the updated  credit report.

159.    That MCM never properly updated the account information or marked the account as disputed even after receiving information of the disputes from EQ.

160.    Alternatively, EQ never updated the account information and marked the account as disputed even after receiving information of the dispute remark from MCM in its subsequent voluntary reporting or via a response to an Automated Credit Dispute Verification ("ACDV") request.

161.    On a date better known by SOC, SOC began to attempt to collect an alleged consumer debt from the Plaintiff.

162.    The alleged debt was said to be owed to Cross River Bank.

163.    That this alleged debt would only have been incurred for a personal line of credit and would have been only for personal or family purposes.

164.    That this alleged account would have only been used for personal, family, or household purposes and would thus be a consumer debt.

165.    Plaintiff sent a dispute letter directly to SOC on 2/2/2024.

166.    The reporting of the alleged debt is inaccurate in that it is not owed by the Plaintiff.

167.    The reporting of the alleged debt contains inaccurate dispute information.

168.    That SOC was reporting the collection account on Plaintiff's credit report with EQ.

169.    That SOC was voluntarily reporting the alleged collection account on Plaintiff's credit report with the credit reporting agencies.

170.    SOC's voluntary reporting to the credit reporting agencies is a "communication" under the FDCPA in connection with the collection of an alleged debt.

171.    On 4/19/2024 SOC re-reported the alleged debt on Plaintiff's credit file and did not notate the dispute by Plaintiff.

172.    SOC did not update the credit report to show that the Plaintiff disputed the alleged debt.

173.    SOC when choosing to report on a consumers credit report must accurately report information.

174.    All of CDR, LF, SOC and MCM actions under the FDCPA complained of herein occurred within one year of the date of this Complaint.

175.    All of Defendants' actions under the FCRA complained of herein occurred within two years of the date of this Complaint.

176.    Plaintiff suffered injury-in-fact by being subjected to inaccurate, unfair, and abusive practices of the CDR, LF, MCM, SOC and/or EQ, and EXP .

177.    Plaintiff suffered actual harm by being the target of inaccurate credit reporting and/or misleading debt collection communications by CDR, LF, MCM, and/or EQ, and EXP .

178.    Plaintiff has suffered actual harm due to credit denials caused by false credit reporting by CDR, LF, MCM, and/or EQ, and EXP .

179.    Plaintiff has suffered actual harm based on his costs and time of repairing his credit, pain and suffering, embarrassment, inconvenience, lost economic opportunity, loss of incidental time, frustration, emotional distress, mental anguish, fear of personal and financial safety and security, and attorney's fees.

180.    Plaintiff's injury-in-fact is fairly traceable to the challenged representations of CDR, LF, MCM, and/or EQ, and EXP.

181.    Plaintiff's injury-in-fact is likely to be redressed by a favorable decision in this Court.

## Count I: Violations Of § 1692e Of The FDCPA – False, Deceptive, Or Misleading Collection Actions

182.    Plaintiff incorporates by reference all other paragraphs of this Petition as if fully stated herein.

183.    Section 1692e of the FDCPA prohibits a debt collector from using any false, deceptive, or misleading representation or means in connection with the collection of any debt.

184.    That because Plaintiff disputed the debt, CDR, LF, MCM, and SOC, when choosing to contact the consumer reporting agencies, were obligated to inform them of the disputed status of the accounts. See Dixon v. RJM Acquisitions, L.L.C., 640 Fed. Appx. 793 (10th Cir. 2016) (Reversed summary judgment to the collection agency on the consumer's § 1692e(8) claim that after she had disputed a debt, the agency had nevertheless reported the debt without disclosing the disputed. The consumer created a genuine fact issue given that she said during the recorded conversation: "I feel that all I owe is $20." A reasonable fact finder could treat the statement as a dispute of the alleged $102.99 debt.); Llewellyn v. Allstate Home Loans, Inc., 711 F.3d 1173 (10th Cir. 2013) "(We agree with the Eighth Circuit's interpretation of § 1692e(8) that a debt collector does not have an affirmative duty to notify [credit reporting agencies] that a consumer disputes the debt unless the debt collector knows of the dispute and elects to report to a CRA.")

185.    CDR, LF, MCM, and SOC used deceptive and misleading tactics when it communicated personal credit information which was known or which should have been known to be false, including the failure to communicate the debts were disputed in violation of 15 U.S.C. §§ 1692e, 1692e(8). See Sayles v. Advanced Recovery Systems, Incorporated, 865 F.3d 246, 249 (5th Cir. 2017); Brady v. Credit Recovery Co., 160 F.3d 64 (1st Cir. 1998) (The plain language of the FDCPA requires debt collectors to communicate the disputed status of a debt if the debt collector knows or should know that the debt is disputed. This standard requires no notification by the consumer but

depends on the debt collector's knowledge that a debt is disputed, regardless of how or when that knowledge is required.)

186.    CDR, LF, MCM, and SOC's collection communications are to be interpreted under the "least sophisticated consumer" standard. See, <u>Goswami v. Am. Collections Enter., Inc.,</u> 377 F.3d 488, 495 (5th Cir. 2004); <u>Taylor v. Perrin, Landry, deLaunay & Durand,</u> 103 F.3d 1232, 1236 (5th Cir.1997) (When deciding whether a debt collection letter violates the FDCPA, this court "must evaluate any potential deception in the letter under an unsophisticated or least sophisticated consumer standard.) See Also, <u>Goswami,</u> 377 F.3d at 495. (We must "assume that the plaintiff-debtor is neither shrewd nor experienced in dealing with creditors.")

187.    CDR, LF, MCM, and SOC violated the Plaintiff's right not to be the target of misleading debt collection communications.

188.    CDR, LF, MCM, and SOC violated the Plaintiff's right to a truthful and fair debt collection process.

189.    CDR, LF, MCM, and SOC's communications with Plaintiff were deceptive and misleading.

190.    CDR, LF, MCM, and SOC used unfair and unconscionable means to attempt to collect the alleged debt.

191.    CDR, LF, MCM, and SOC's communications were designed to cause the debtor to suffer a harmful disadvantage in charting a course of action in response to CDR, LF, MCM, and SOC's collection efforts.

192.    CDR, LF, MCM, and SOC's failure to mark debts as disputed they know or should know are disputed violates § 1692e, 1692e(8) of the FDCPA.

193.    CDR, LF, MCM, and SOC's conduct has caused Plaintiff to suffer damages including but not limited to a damaged credit score, the loss of time incurred by Plaintiff, and attorneys' fees paid for advice regarding his situation.

194.    Congress has found that "[a]busive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." 15 U.S.C. § 1692(a).

195.    Here, Plaintiff has suffered an injury-in-fact in at least one of the manners contemplated by Congress when it passed the FDCPA because of CDR, LF, MCM, and SOC's conduct.

196.    The FDCPA ensures that consumers are fully and truthfully apprised of the facts and of their rights, the act enables them to understand, make informed decisions about, and participate fully and meaningfully in the debt collection process. The purpose of the FDCPA is to provide information that helps consumers to choose intelligently. CDR, LF, MCM, and SOC's false representations misled the Plaintiff in a manner that deprived him of his right to enjoy these benefits; these materially misleading statements trigger liability under section 1692e of the Act.

197.    Plaintiff seeks to end these violations of the FDCPA. Plaintiff has suffered actual damages including but not limited to, fear, stress, mental anguish, emotional stress and acute embarrassment.

198.    Defendants CDR, LF, MCM, and SOC's violation of § 1692e of the FDCPA renders them liable for actual and statutory damages, costs, and reasonable attorneys' fees. See, 15 U.S.C. § 1692k.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, Christopher Reeves, prays that this Court:

      A.      Declare that CDR, LF, MCM, and SOC's debt collection actions violate the FDCPA;

      B.      Enter judgment in favor of Plaintiff Christopher Reeves, and against CDR, LF, MCM, and SOC, for actual and statutory damages, costs, and reasonable attorneys' fees as provided by § 1692k(a) of the FDCPA; and

      C.      Grant other such further relief as deemed just and proper.

### Count II: Violations Of § 1692d Of The FDCPA – Harassment or Abuse

199.      Plaintiff incorporates by reference all other paragraphs of this Petition as if fully stated herein.

200.      Section 1692d prohibits any debt collector from engaging in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt.

201.      CDR, LF, MCM, and SOC's communications with Plaintiff were meant to shame, embarrass, and harass Plaintiff by misrepresenting the alleged debts status.

202.      CDR, LF, MCM, and SOC attempted to coerce Plaintiff into paying alleged debts his otherwise would not have paid by submitting false and inaccurate information to his credit report.

203.      CDR, LF, MCM, and SOC could have no other purpose in doing this except to harm Plaintiff's reputation and deprive him of his ability to receive any type of credit line unless he paid the alleged debts.

204.      Defendants CDR, LF, MCM, and SOC's violation of § 1692d of the FDCPA render them liable for actual and statutory damages, costs, and reasonable attorneys' fees. See, 15 U.S.C. § 1692k.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Christopher Reeves, prays that this Court:

    A.      Declare that CDR, LF, MCM, and SOC's debt collection actions violate the FDCPA;

    B.      Enter judgment in favor of Plaintiff Christopher Reeves, and against CDR, LF, MCM, and SOC, for actual and statutory damages, costs, and reasonable attorneys' fees as provided by § 1692k(a) of the FDCPA; and

    C.      Grant other such further relief as deemed just and proper.

## COUNT III: Violations Of § 1692f Of The FDCPA – Misleading Representations & Unfair Practices

205.    Plaintiff incorporates by reference all other paragraphs of this Petition as if fully stated herein.

206.    Section 1692f prohibits the use of unfair and unconscionable means to collect a debt.

207.    CDR, LF, MCM, and SOC attempted to collect a debts by distributing false information that would negatively impact Plaintiff's rights as a consumer, as well as that would harm Plaintiff's financial health.

208.    CDR, LF, MCM, and SOC used unfair and unconscionable means to attempt to collect the alleged debts.

209.    CDR, LF, MCM, and SOC's violation of § 1692f of the FDCPA render them liable for actual and statutory damages, costs, and reasonable attorneys' fees. See, 15 U.S.C. § 1692k.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Christopher Reeves, prays that this Court:

    A.      Declare that CDR, LF, MCM, and SOCs debt collection actions violate the FDCPA;

    B.      Enter judgment in favor of Plaintiff Christopher Reeves, and against CDR, LF, MCM, and SOC, for actual and statutory damages, costs, and reasonable attorneys' fees as provided by § 1692k(a) of the FDCPA; and

      C.      Grant other such further relief as deemed just and proper.

## Count IV: Violation Of 15 U.S.C. § 1681e(b) of the FCRA-Reinvestigations of Disputed Information

210.    Plaintiff incorporates by reference all other paragraphs of this Petition as if fully stated herein.

211.    Plaintiff's credit report contained inaccurate information as it did not include a dispute notation even after Plaintiff disputed the accounts directly with EQ, and EXP.

212.    EQ, and EXP failed to follow reasonable procedures to keep Plaintiff's credit file accurate by failing to mark the accounts as disputed by reporting erroneous and undesired information on Plaintiff's credit report.  EQ, and EXP  failed to send notice of the disputes received from Plaintiff to the furnishers as required, and EQ,  and EXP  failed to update Plaintiff's credit file to ensure accuracy; EQ,  and EXP  violated 15 U.S.C. 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files it published and maintains concerning the Plaintiff.

213.    As a result of this conduct, action and inaction of EQ, and EXP, the Plaintiff suffered damage by loss of credit, loss of the ability to purchase and benefit from a credit, the mental and emotional pain and anguish and the humiliation and embarrassment of credit denials.

214.    EQ, and EXP 's conduct, action, and inaction were willful, rendering them liable for statutory damages in the amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent, entitling the Plaintiff to recovery under 15 U.S.C. § 1681o.

215.    Due to EQ, and EXP 's conduct, Plaintiff is entitled to recovery costs and attorney's fees from EQ,  and EXP  in the amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Christopher Reeves, prays that this Court:

A.      Declare that EQ, and EXP 's credit reporting actions violate the FCRA;

B.      For EQ, and EXP 's willful violations, enter judgment in favor of Plaintiff Christopher Reeves, and against EQ,  and EXP , for actual damages, statutory damages, costs, and reasonable attorneys' fees as provided by §1681n of the FCRA;

C.      For EQ, and EXP 's negligent violations, enter judgment in favor of Plaintiff Christopher Reeves, and against EQ,  and EXP , for actual damages, statutory damages, costs, and reasonable attorneys' fees as provided by §1681n of the FCRA;

D.      Or, in the alternative, enter judgment in favor of Plaintiff Christopher Reeves, and against EQ, and EXP , for actual damages, costs, and reasonable attorneys' fees as provided by §1681o of the FCRA; and

E.      Grant other such further relief as deemed just and proper.

### Count V: Violation Of 15 U.S.C. § 1681i of the FCRA-Reinvestigations of Disputed Information

216.    Plaintiff incorporates by reference all other paragraphs of this Petition as if fully stated herein.

217.    EQ, and EXP were reporting inaccurate and incomplete information on Plaintiff's credit report.

218.    By failing to mark the accounts as disputed, EQ and EXP reported erroneous and undesired information on Plaintiff's credit report.

219.    EQ, and EXP 's inaccurate and incomplete reporting of Plaintiff's credit file is misleading to the extent that it can adversely impact Plaintiff's credit decisions.

220.    Plaintiff disputed the accuracy of his credit report directly with EQ, and EXP  via dispute letters sent through USPS.

221.    Defendants EQ, and EXP  violated 15 U.S.C. § 1681 after failing to conduct lawful reinvestigations of Plaintiff's disputes and provide the furnishers with notice of Plaintiff's dispute.

222.     EQ, and EXP  failed to report the status of the disputed accounts as disputed or delete the inaccuracy from Plaintiff's credit report after receiving notice of the disputes directly from Plaintiff.

223.     Defendants EQ, and EXP  willfully or negligently violated 15 U.S.C. § 1681i by failing to forward all relevant information to CDR, LF, MCM, and SOC; by failing to maintain reasonable procedures with which to filter and verify disputed information in the Plaintiff's credit file; and by relying upon verification from a source they have reason to know is unreliable; and by publishing inaccurate information.

224.     As a result of this conduct, action and inaction of EQ, and EXP , the Plaintiff suffered damage by loss of credit, loss of the ability to purchase and benefit from credit, and the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

225.     EQ, and EXP 's conduct, action and inaction were willful, rendering them liable for actual or statutory damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, they were negligent entitling the Plaintiff to recovery actual damages under 15 U.S.C. § 1681o.

226.     The Plaintiff is entitled to recovery costs and attorney's fees from EQ, and EXP  in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, Christopher Reeves prays that this Court:

A.     Declare that EQ, and EXP 's credit reporting actions violate the FCRA;

B.     Enter judgment in favor of Plaintiff Christopher Reeves, and against EQ, and EXP , for actual damages, statutory damages, costs, and reasonable attorneys' fees as provided by §1681n of the FCRA;

C.     Or, in the alternative, enter judgment in favor of Plaintiff Christopher Reeves, and against EQ, and EXP , for actual damages, costs, and reasonable attorneys' fees as provided by §1681o of the FCRA; and

D.     Grant other such further relief as deemed just and proper.

## Count VI: Violation Of 15 U.S.C. § 1681s-2(B) of the FCRA- Duties of Furnishers of Information upon Notice of Dispute

227.     Plaintiff incorporates by reference all other paragraphs of this Petition as if fully stated herein.

228.     Defendants CDR, LF, MCM, and SOC violated 15 U.S.C. § 1681s-2(b) by continuing to report the CDR, LF, MCM, and SOC representations within Plaintiff's credit file with EQ, TU and EXP without also including a notation that this debt was disputed; by failing to fully and properly investigate the Plaintiff's dispute of the CDR, LF, MCM, and SOC representations; by failing to review all relevant information regarding same; by failing to accurately respond to CDR, LF, MCM, and SOC; by failing to correctly report results of an accurate investigation to every other credit reporting agency; and by failing to permanently and lawfully correct its own internal records to prevent the re-reporting of the CDR, LF, MCM, and SOC representations to the consumer reporting agencies.

229.     As a result of this conduct, action and inaction of CDR, LF, MCM, and SOC, the Plaintiff suffered damage by loss of credit; loss of the ability to purchase and benefit from credit; and the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

230.     Defendants CDR, LF, MCM, and SOC's conduct, action and inaction were willful, rendering them liable for actual or statutory damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent entitling the Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

231.     Plaintiff is entitled to recover costs and attorney's fees from CDR, LF, MCM, and SOC in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Christopher Reeves, prays that this Court:

       A.      Declare that CDR, LF, MCM, and SOC's credit reporting actions violate the FCRA;

       B.      Enter judgment in favor of Plaintiff Christopher Reeves, and against CDR, LF, MCM, and SOC for actual damages, statutory damages, costs, and reasonable attorneys' fees as provided by §1681n of the FCRA;

       C.      Or, in the alternative, enter judgment in favor of Plaintiff Christopher Reeves, and against CDR, LF, MCM, and SOC, for actual damages, costs, and reasonable attorneys' fees as provided by §1681o of the FCRA; and

       D.      Grant other such further relief as deemed just and proper.

## JURY DEMAND

232.      Plaintiff demands a trial by jury on all Counts so triable.

Dated: February 24, 2025

Respectfully Submitted,

**HALVORSEN KLOTE**

By:     _Joel S. Halvorsen_

Joel S. Halvorsen, #67032
680 Craig Road, Suite 104
St. Louis, MO  63141
P: (314) 451-1314
F: (314) 787-4323
joel@hklawstl.com
*Attorneys for Plaintiff*